This is the court. My name is William Keong, representing the petitioner, Zhu. Zhu applied for asylum before the asylum office. The asylum office denied his asylum case. Not denied, but referred to the immigration judge. And before the asylum office, his claim for asylum was because he participated in an anti-government rally in China. However, when he went before the immigration judge, he added another ground, forced abortion on his wife in China. The immigration judge found negative credibility, mainly because the judge found it extremely difficult to assess credibility for the petitioner's statement that he could take the advice of a non-lawyer, an over-experienced immigration lawyer, that a man could not apply for asylum based on his wife's forced abortion. But the fact is, Zhu's attorney, Mr. Perry Mason, excuse me, not Perry Mason, but Lauren Mason, Lauren Mason never participated in the preparation of the asylum case for him. It was always a Chinese woman claiming to be an interpreter. And this woman prepared the asylum case for the petitioner in the petitioner's home department. Counsel, the petitioner's statement that's attached to his first asylum petition, a very, very long, very, very detailed statement. Yes. It appears to have been very, very carefully prepared. Yes. The petitioner said he prepared it himself. The interpreter just translated it into English. But it was prepared with some knowledge as to what the standards are for obtaining asylum in this country. It was a very carefully written narrative and a very detailed narrative of the actions by the airport authority taking over his land and the nature of the protest and the way that he was treated after this government protest. It suggests, given his other statements, that he didn't know that he was applying for asylum at the time he came to the United States, that he had to have been informed by somebody as to what those standards were. I would imagine by the Chinese interpreter who prepared his asylum application. Is it not unusual, given the well-known Chinese population policies, that that question would not have come up at any time during their conversation, given the great detail that's been put into his statement? Well, the petitioner claims that he was advised by his roommate, a Chinese guy. Right, but his roommate isn't preparing his asylum. He's got the Chinese interpreter under the supervision of Miss Mason who prepares this and translates it. That's right, but the petitioner had the wrong notion that he could not apply because he was a man. The law says anybody who has suffered forced abortion is eligible for asylum. A man never could be forcibly aborted. So, therefore, respondents, the petitioner, I keep saying respondent because the immigration court would call him a respondent. The petitioner thought it was very logical, the advice was logical, that a man don't apply asylum because he never suffered abortion. But in any event, the immigration judge faulted the respondent, mainly on the two different grounds of asylum. The immigration judge said it was extremely incredible that he would take the advice of somebody who's not a lawyer, over an experienced immigration lawyer, Mr. Mason. However, for the court's information, Mr. Mason has resigned from the bar under the charge of allowing unauthorized practice of law in his law office, and this happened in July of this year. His Chinese assistant is presently before the Los Angeles County Superior Court for those charges.  I don't know that that immediately equates to the fact that he did a bad job for the county. He might have been doing a good job, even though he had people, unauthorized practice of law people, doing that sort of thing. I understand that. I do have a question that has troubled me in reviewing this record. Your client produced a document in Chinese that was translated that purported to show the date of the abortion in China. That's right. That's page 184. And that was produced, as I remember, after he got his second counsel. Was that you? That's right, Your Honor. But he produced that document at that time. Did he have that document before? I mean, was there any evidence in the record that he always had that document with him? No, it was upon my advice to him that he was eligible to apply for asylum based on his wife's forced abortion in the past. Therefore, I asked him to produce the evidence. And this piece of evidence was submitted to the immigration judge, was properly entered into evidence without any objection from a government trial attorney. Even though there was evidence in the record that you tried to get it authenticated and was unable to be authenticated in China, right? That's right. The Chinese government does not want to authenticate this kind of document. But in spite of that, the government didn't object, and the immigration judge did admit it into evidence. The trial attorney from the government did not object to this particular evidence. And, curiously enough, at the judge's decision, the judge did not mention a word about this corroborative evidence, and instead the judge said there was a lack of corroborative evidence to deny this case. Well, I think as I read the immigration judge following Judge Bybee's questions, what he said was, I find you not credible. So he wasn't taking what he said about the abortion on its merits because he found that his testimony wasn't credible. That's right. It's true, though, that he did not mention anything about the document. However, the immigration judge's oral decision says, moreover, having concluded that Respondent was not a credible witness, he is required to produce corroborative evidence. And the judge obviously found that he did not produce corroborative evidence, but the judge missed the point that the Respondent, that the petitioner did produce medical records for the abortion. In spite of the non-authentication, it was introduced as it was, and I think it was a translated document, right? Original plus translated. Okay. The immigration judge also drew out a lot on the petitioner for not presenting testimony in court about the first claim of asylum that he participated in an anti-government rally in China. But the fact was, I as his counsel, at the beginning of the hearing before the immigration judge, already clearly told the judge that the petitioner will only testify on the abortion issue because under my advice, I think that is sufficient to grant him asylum. We did not need to go into the other claim, which may not be sufficient. Thank you, Your Honor. There are no further questions. Counsel, do you have anything else that you want to present to us now? You can reserve the rest of your time. I will reserve. Okay. Good morning, Your Honors. My name is Carol Federighi. I represent the respondent, Attorney General Mukasey, in this matter. Why don't we jump right into that issue with regard to the document. Conceding what the immigration judge, not conceding, reading the immigration judge, he found that the petitioner was not credible, and he said he should produce documentation. The government didn't object. This document came in, which purports to be and says for what it is, the fact that the wife did have an abortion. That was never mentioned by the judge. What do we do with that? I mean, there is documentation in the record that there was this abortion, and that was the ground that counsel brought before the IJ, which he ignored because of the credibility finding. So how do we handle that? Well, it's true that there is evidence that she had an abortion, or that's what the document shows. Well, the document came in and was admitted. So whatever it is, we have to deal with that. That doesn't mean it was a forced abortion. All it says is that she had an abortion. It doesn't mean that she didn't do it voluntarily. So the question is whether his claim that the abortion was forced is credible or not. And the immigration judge found that there was a problem with that claim. And the problem was that he did not give a good explanation for why he raised that claim later, after he'd already filed his first asylum application. I thought he put in evidence that it was raised later because on the first stuff, he really thought he was not eligible for asylum based on the abortion claim. That's what he said. But the immigration judge didn't find that believable based on his own experience and also the law. I mean, he knew that since 1997, the board had said that husbands as well as wives are eligible for asylum. Well, did he know that? Did he know that? Well, and the immigration judge knew that the Chinese community knew that because he was seeing husbands coming in all the time raising that claim. So he knew that the Chinese expatriate community was aware that husbands can make this claim. And he just didn't find it believable that this alien was not aware of that common knowledge. And I think that is a reasonable conclusion. It was based on his own experience. You know, in our circuit, we have some very strict rules on credibility, maybe even more harsh than other circuits. And you think your argument can survive some of our decisions relative to what the IJ can use for credibility findings? Yes, sir. I think it does. The IJ based it on several different problems that he had with Mr. Zhu's testimony and his claims. In addition to his claim of the forced abortion, his explanation for why that was raised late, as I said, the immigration judge just didn't find it believable that Mr. Zhu would have not been aware of the current state of the law given what the immigration judge knew based on his own experience, not just speculation, but based on his experience as to what he knew the Chinese community was aware of. He also found problems with Mr. Zhu's claim that he was being persecuted for the anti-government demonstration. He said that the police were continuing to be interested in him. They were continuing to come to his wife's house and ask for him every two or three days. He said that twice in his testimony, that years, this was two or three years after he left China, that the police were still coming to look for him every two or three days. The immigration judge just did not find that believable. Based on basic principles of human nature, it's just not believable that the police would... What does that event have to do with the abortion? Our cases are pretty specific when it comes to credibility. Is it an insignificant item? Is it something that's not related to this item? Does it directly go to his claim? His claim here is now for abortion. The counsel notified IJ, I'm going on abortion only. So he goes to the other claim, the persecution for these... And he goes on this issue about when or where they could have seen his wife. He says the wife moves every ten days. She also says the police come around every two or three days. And from that he extrapolates that he doesn't believe him. It's impossible that the police would do that. I think we have a pretty harsh standard, like it or not. And we have to deal with that. Right. And that ground to me doesn't sound like one that would survive our test. I'm just questioning you to see what you think. Well, I think you're talking about the fact that, in general, an adverse credibility finding cannot be based on speculation. Is that what you're getting at? I'm not sure exactly what we saw. We've also said you can't take a remote instance and say this is related to the abortion issue. So just because you made a statement that I don't believe about what your wife told you about the police, it doesn't relate to the abortion issue. I agree with that, Your Honor. But I think my reading of the transcript was not that he was disavowing his original claim about the anti-government demonstration, that he was saying I'm not relying on that at all. I think my reading of it was that he was saying I'm going to focus on the abortion claim here and I'm going to testify about that. The other claim is still out there. If you want to ask me on cross-examination, you know, I'll be happy to answer any questions. But he didn't say I'm not proceeding on that claim. Now, maybe that's what he said here. I didn't read his argument that way. But if he's moving away from that, I agree, you know, the credibility findings pertain to each individual claim. So I was just arguing that that claim also was probably not credible. We'd have to then extrapolate from your argument now that, in fact, what was going on is that the immigration judge was considering not only the persecution based upon his problem with the government, but also the abortion. So the immigration judge first looks at his problems, finds that they're not credible based upon his knowledge of the system and whatever, and then says, well, you're not credible, so I'm going to apply the non-credibility when it comes to the abortion. Is that what you're saying? No, no. I don't think that's what he did. He didn't amalgamate the findings. I think he found that. He didn't find any credibility findings relative to the abortion at all. He didn't talk about it at all. He just blew out the abortion because he found he wasn't credible. You can't get to where he went unless you find first that he's not credible, because there was testimony and there was documentation with regard to the abortion. So unless you blow out his credibility and say, I'm not going to believe anything you tell me, and the only way you get there, according to your argument, is to say his immigration claim or his asylum claim based upon him was incredible. No, the immigration judge got there by looking solely at the abortion claim and saying, okay, he raised it late. Why was that? It's suspicious if someone fills out, as Judge Bybee pointed out, a very detailed application and has an attorney, and no matter how incompetent one has to expect an attorney when confronted with a Chinese asylum application would ask them about the possibility that they had experience with the Chinese population control authorities. So with all of that, he never raised the claim until after his interview with the asylum officer and after his asylum application was originally denied. And in his defense, he says that it was because his roommate told him that he couldn't apply. So then you're saying then we move upstream. Being he was not believable about his asylum claims relative to himself, his general credibility, then he didn't believe the credibility about the detail with his roommate. No, I'm not saying that the immigration judge ever combined the two. He said, okay, let's just look at his claim that the roommate told him that husbands were not eligible, and the immigration judge just found that was not a believable claim based on what he knew of the knowledge within the Chinese community. Then we can throw out what he said about he didn't believe him because of his testimony about his wife moving every 10 days. We can throw that out then. We'd have to throw that out, right? Yeah, as to the abortion claim. If you're deeming him not to be proceeding on the anti-government demonstration. Yeah, let's assume he loses on the other one. Yeah, then it's not relevant to the credibility claim on the abortion claim. So then we're left with the testimony with regard to my roommate told me I wouldn't qualify, and what else with regard to the abortion that the IJ found to find him incredible relative to the abortion claim. And also that he thought it was unreasonable that his attorney wouldn't have mentioned it at some point in the consultations. And that goes back to his response saying, well, translator prepared my petition. My roommate told me it didn't count. I didn't tell him. My lawyer came just a little while before the hearing at the hearing place, and he didn't ask me, and I didn't say anything. Right. And what the immigration judge said is, in my experience, I see these claimants all the time, Chinese applicants who've come here through various means. They all go through the same somewhat ad hoc. So you've seen one. You've seen them all. No, not that. Boy, that's what you said. No, he said. He said, I've seen them all, and they're all the same, and you're trying to give me a different story. No, what he's saying is I've seen Chinese applicants come here and bringing these claims all the time, so I think that there's knowledge in the community about these claims, the fact that, one, he would have believed his roommate without asking someone with more authority, more experience with the system. That's not credible, that he wouldn't have been informed by other people within the system. Before he left China, he wouldn't have been informed about this possibility. I mean, people in China are aware of the state of U.S. law in this area. Well, it sounds like to me that there's some sort of class he's setting up, that all Chinese people are aware of the fact that if, and it is true that they're aware of the abortion, there's no doubt about that. So if you come to the United States, you better tell them about it because that's a real good ground to be there. I think that's pretty much what the immigration judge was saying, yes, and that since the case law had been out since 1997, his claim that he was ignorant of the case law and that he hadn't checked around within the Chinese community to get a more accurate view of what the case law was just wasn't believable. As I remember, there was quite a delay in this case, wasn't there? Am I getting the wrong case? Well, this case has been briefed for a while, but, no, there was no delay. He arrived in 2001, in October of 2001, and his merits hearing was in August of 2003. So that was a fairly normal process. No, we've had it for a while. Yes. But I want to just remind the court also of the standard of review here. You have to find that the record compels the conclusion that Mr. Zhu was credible about his abortion claim, and I don't think the record compels that conclusion here. There was enough doubts about the claim because he raised it so late in the process, after his original claim had been denied by the asylum officer, and without really a good explanation. And I want to distinguish this case from the case that the petitioner relies on, the Chen case, where the abortion claim was raised late, but that's because the original application was filed before the board precedent and raised CYZ, and after that decision was issued, then the petitioner came forward with a new claim of a forced abortion. In that case, there was a change in the case law that justified the late raising of the claim. There was no such change here, and his claim that he was naive about the state of the law just simply is not believable in light of the extensive experience that I.J. had with the Chinese community's knowledge of this case. Well, let's explore one other issue. You indicated to me that even though he produced documentary evidence of an abortion, it didn't show that it was a forced abortion. What's in the record that shows that abortions in China are commonly given that are not forced? In other words, we know they're forced because we know that if you have, you're given only the option of having one child, and so they monitor. The record in this case is that the wife was monitored by her employer. Yes. So what was the record in the case that they automatically give abortions because they're not forced? How can we come to that conclusion? There is a country report in the record, and I haven't looked at it with that issue in mind, but the fact is because of the rules and regulations in China, there are millions of abortions there every year, and most of those abortions are people going there voluntarily in compliance with the rules, if you want to put it that way. Okay. If that's in the record and if the petitioner testified that his wife was forced to have an abortion, what do we do with that? We're stuck now with a credibility claim? Yes, exactly. Exactly. Yes. And as I said, there are sufficient doubts about his credibility that the record does not compel the conclusion that he was credible about the claim of a forced abortion as opposed to a merely voluntary abortion. And if there are no further questions, the Board's decision should be upheld, and I will submit the case. Okay. Thank you, Ms. Federighi. Mr. King, do you have anything in response? I respectfully submit. Okay. I thank counsel for the argument, and Zhu v. Mukasey is submitted.
judges: Bowman, Brunetti, Bybee